IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | Crim. Action No. 1:11-CR-67 |
| v. | § | |
| | § | JUDGE RON CLARK |
| CALVIN WALKER | § | |

**<u>MEMORANDUM ORDER: RE INSTRUCTION ON VOID AGREEMENTS</u>**

Defendant Calvin Walker, an electrical contractor, is charged with thirty-two counts of various types of fraud and five counts of money laundering in connection with payments of nearly $4,000,000 he received from Beaumont Independent School District ("BISD") for work he performed on twelve projects in 2008, 2009, and 2010. From the briefs and opening statements of counsel to the jury, it is apparent that one issue is whether the materiality of Mr. Walker's representations to BISD may be determined by reference to the terms of a general maintenance contract properly awarded by BISD. Mr. Walker argues that materiality should relate only to what he asserts are separate lump sum agreements to perform each of the projects.

The court concludes that the projects in question could not, under the law, be awarded under the maintenance contract. The court also finds that none of the projects were awarded to Mr. Walker in accordance with the competitive bidding statute. As a matter of law, each of these purported agreements or contracts is therefore illegal and void. Therefore, neither Mr. Walker nor the Government may rely upon alleged contract provisions to establish materiality.

This does not shield Mr. Walker from federal criminal fraud statutes. Since the District accepted and paid for the projects, Mr. Walker was entitled to the reasonable value of materials and services provided under what Texas cases have described as an implied contract imposed for reasons

1

of fairness, or quantum meruit. The Government may meet its burden of proof on the material misrepresentation element of each count by proving beyond a reasonable doubt that Mr. Walker made one or more material false representations concerning the cost of materials, supplies, or subcontractor services which were inflated beyond the actual costs incurred by Mr. Walker in connection with the project identified in that count. Mr. Walker may argue, or attempt to show, that any representations were not false or were not material, but he may not do so on the theory that an alleged term of an illegal contract makes a misrepresentation immaterial.

**<u>Introduction</u>**

In thirty-two of thirty-seven counts in this indictment, the Government charged Defendant Calvin Walker with fraud under various federal statutes, arising out of some twelve projects he performed for BISD.[1] The Government has asserted that some, if not all, of these projects were governed by the original maintenance contract awarded to Mr. Walker by BISD or the extensions of it. This contract provided that Mr. Walker would receive the cost of all materials plus a 10% markup, and a specified hourly rate for work performed by electricians. Under this theory of the case, Mr. Walker provided material false statements concerning the cost of material and work performed.

---

[1]The number of projects depends on how they are defined, and which projects are grouped together. The twelve projects the court refers to include the following: (1) the Ozen High School softball/baseball fields repairs; (2) the Smith Middle School hurricane repairs; (3) the King Middle School hurricane repairs; (4) the Amelia and Caldwood Elementary temporary buildings; (5) the Regina Howell and South Park Middle School temporary buildings; (6) the Smith Middle School wood shop/kitchen repairs; (7) the South Park Middle School stadium light removal; (8) the South Park Middle School stadium light replacement; (9) the Dunbar Elementary repairs; (10) the Blanchette/Bingman/Fehl Elementary repairs; (11) the French Elementary repairs; and (12) replacement of the generator at BISD Administration.

Mr. Walker asserts that all of the projects identified in the indictment were approved by BISD as separate lump-sum contracts, so any information about the cost of materials used, or labor performed, could not be material. This issue is important, because whether or not documents prepared by Mr. Walker are material and false may depend, at least in part, on whether or not the information was required by contract to be used in the calculation of payment for work performed or material provided.

Because the award of contracts, and the payment of public funds, by BISD is governed by Texas law, the court must first determine how a Texas court would analyze the duties and responsibilities of the parties, and then determine whether that has an effect on proof of any element of the offenses with which Mr. Walker has been charged. The court notes that public policy of the State of Texas is reflected in its statutes. *Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W 3d 240, 250 (Tex. 2003).

**Texas law restricts the payment of public funds to private individuals and entities**

"The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever. . . ." Tex. Const. art III, § 51. This provision, applicable to school districts, has been part of Texas law since the original Constitution of 1876 and prevents profligate officials from giving public funds to their friends, supporters, or those they deem "worthy." *See* Tex. Att'y Gen. Op. Nos. MW-89 (1979), JC-0011 (1999); Tex. Const. art. III, §51 interp. Commentary (West 2007). To ensure that public moneys in the hands of school boards are protected, the legislature has, over the

3

years, enacted various competitive bidding laws. The provisions at issue in this case are found at Texas Education Code §44.031 *et seq.*

The purpose and intent of competitive bidding laws is "to stimulate competition, prevent favoritism and secure the best work and materials at the lowest practicable price, for the best interests and benefit of the taxpayers and property owners." *Tex. Highway Comm'n v. Tex. Ass'n of Steel Imps., Inc.*, 372 S.W.2d 525. 527 (Tex. 1963) (citing *Sterrett v. Bell,* 240 S.W.2d 516, 520 (Tex. Civ. App. — Dallas 1951, no writ)). Noncompliance with competitive bidding statues cannot be excused on the ground that the governmental entity actually obtained better work, or a lower price, or that nobody was hurt. *Tex. Highway Comm'n,* 372 S.W.2d at 529.

Failure to comply with the Texas Education Code's competitive bidding provisions must be distinguished from other irregularities in the voting process of a school board. For example, the Open Meetings Act specifically states that a failure to provide proper notice results in any act of the governing body being only voidable, not void. Tex. Gov. Code. § 551.141. No such provision is found in the Texas Education Code. To the contrary, violation of the competitive bidding requirements of the Texas Education Code by district officers, employees, or agents can result in criminal prosecution in state court. Tex. Ed. Code §44.032 (b)-(d).

**Agreement made with school district in violation of the competitive bidding statute is void**

Compliance with the competitive bidding statutes is mandatory, and if the requirements of the law are not met, the contract is void. *Tex. Highway Comm'n,* 372 S.W.2d at 530; *Richmond Printing v. Port of Houston Auth.*, 996 S.W.2d 220, 224 (Tex. App. - Houston [14th Dist.] 1999, no pet.). Such a void contract may not be ratified after the fact by the school district or by the contractor.

*Richmond Printing*, 996 S.W.2d at 224; *see also Jack v. State***,** 694 S.W.2d 391, 397 (Tex. App. - San Antonio 1985, writ ref'd n.r.e.).

Because, as set out above, a principal purpose of the competitive bidding statutes is to protect the public, it is important to distinguish between cases involving only private parties and those involving a governmental entity. Under Texas law, ratification and estoppel may be applicable to certain voidable, and perhaps even void, contracts between private parties. But where a purported contract with a governmental entity violates the competitive bidding laws, there is no equitable or legal reason for the courts to apply equitable doctrines such as ratification and estoppel, when the result of such violations is that taxpayers are victimized by corrupt, or even merely foolish or negligent, public officials.

**Contractor may not rely upon agreement made in violation of competitive bidding statute**

A school district may only act by and through its board of trustees; statements, or even written agreements, of an employee or even a board member cannot bind the district. *See* Tex. Educ. Code § 11.151(b); *Argyle Indep. Sch. Dist. ex rel Bd. of Trustees v. Wolf*, 234 S.W.2d 229, 239 (Tex. App. — Fort Worth 2007, no pet.); *Cook v. City of Addison*, 656 S.W.2d 650, 657 (Tex. App — Dallas 1983, writ ref'd n.r.e.).

It is the duty of a successful bidder to verify that all of the requirements of the applicable statute are met before work commences or the goods are delivered. *Richmond Printing,* 996 S.W.2d at 224. A contractor who starts work for, or delivers goods of materials to, a school district under an agreement made in violation of competitive bidding laws may not enforce that agreement or rely upon it, even if administration officials or the school board approved it, and regardless of whether

payment was approved by administration officials or the school board. *See id.* The law presumes that such a contractor knew that his "contracts," or agreements to work, on the projects in question violated the law. *Jack*, 694 S.W.2d at 397. This may seem harsh, but history teaches that local officials frequently can not resist the temptation of sweetheart contracts, kickbacks, and awards to friends and family.[2] This relatively light burden on contractors, combined with quantum meruit recovery, as discussed below fairly balances public policy concerns.

**Where work performed in violation of competitive bidding statue has been accepted by a school district, contractor may be paid for reasonable value**

What about fairness to the contractor? As discussed above, the contractor is presumed to know that he is engaged in an illegal and void contract with a public entity. Nevertheless, fundamental unfairness is avoided by the rule allowing, in certain circumstances, the recovery of only the reasonable value of the goods, materials, or services actually received by the public entity. *Harris Cnty. v. Emmite*, 554 S.W.2d 203, 205 (Tex. Civ. App. — Houston [1st Dist.]1977, writ dism'd w.o.j.); *Richmond Printing*, 996 S.W.2d at 224.

In such circumstances, the Texas Supreme Court has held that it is not correct to say that any of the terms of the original contract are enforced, for they are illegal and void. Rather, an implied contract for reasonable value is imposed, because justice demands that the public entity be liable for the reasonable value of what it has received. *City of Houston v. Finn*, 161 S.W.2d 776, 777-78 (Tex. 1942); *Emmite*, 554 SW2d at 204-05. This theory has been applied to a local school district, in

---

[2]*See e.g.* Frank Anechiarico &James B. Jacobs, Purging Corruption from Public Contracting, 40 N.Y.L. Sch. L. Rev. 143, 145 (1995).

response to a contractor's plea of quantum meruit. *Crosby v. P.L. Marquess & Co.*, 225 S.W.2d 461, 464 (Tex. Civ. App. — Beaumont 1950, writ ref'd. n.r.e.).[3]

The Government asserts that the court could look to multiple documents to determine the essential terms of a contract, relying upon *ICI Construction, Inc. v. Orangefield Independent School District,* 339 S.W.3d 235, 239 (Tex. App. — Beaumont 2011, no pet.). This court agrees that under Texas law, a court in certain circumstances "may determine, as a matter of law, whether multiple documents comprise a written contract." *Id.* (internal quotation omitted). However, the court in *Orangefield ISD* was not dealing with a total failure to comply with the competitive bidding laws that made the agreement void. In that case, there was clear evidence that the trustees of the Orangefield ISD voted precisely in accordance with the emergency exception in Texas Education Code § 44.031. *Id.* at 237. As discussed below, that evidence is not present in this case.

**<u>BISD did not award Mr. Walker a contract for any of the projects identified in the indictment in compliance with the Texas Education Code</u>**

With exceptions not pertinent to this case, all contracts made by a Texas school district valued at $25,000 or more—and on or after June 19, 2009, at $50,000 or more—in the aggregate for each 12-month period, shall be made by one of the methods set out in Section 44.031 of the Texas Education Code. *See* Tex. Ed. Code §44.031(a) (West Supp 2011).[4]

---

[3]*See also Mitsuba Tex. Inc. v. Brownsville Indep. Sch. Dist.*, 2000 WL 122348 (Tex. App. — Dallas Feb. 2, 2000, no pet.) (unpublished).

[4]Because the initial maintenance contract was awarded in 2006, and the projects and payments listed in the indictment occurred in 2008-2010, the court has examined the amendments to the statute adopted in 2007 and 2009. The limit was $25,000 until increased by the legislature, effective June 19, 2009. Acts of 2009, 81st Leg., ch. 1266 § 1 (current version at Tex. Educ. Code § 44.031 (West. Supp. 2011)).

In 2006, BISD accepted proposals to perform electrical maintenance for District's facilities on an as-needed basis, based upon set hourly rates for workers and a percentage markup for materials. This is one of the methods approved for a school district. *See* Acts of 2005, 79th Leg. ch. 1205, § 2 (current version at Tex. Educ. Code § 44.031 (West. Supp. 2011)). Mr. Walker won the bid on the contract in 2006, and the Board exercised its option to renew in 2007, 2008, 2009, and 2010. The validity of this maintenance contract is not in dispute.

In November 2007, the voters passed a $388 million dollar bond issue for renovation and construction of district facilities. On September 13, 2008, Hurricane Ike caused extensive damage to BISD facilities. These events involved BISD in the hiring of numerous contractors and subcontractors for construction, renovation and repair projects. Some of these projects were assigned to Mr. Walker, who was paid well over $4,000,000 between 2008 and 2010.

Evidently the BISD Superintendent was not familiar with Texas statutes governing the award of contracts by school districts, and it appears that the advice of counsel on the projects described in the indictment was either not requested or not accepted.[5] There is simply no evidence that a contract for any of these projects was properly awarded under any of the methods specified in Texas Education Code §44.031. The parties submitted no copy of a notice for bids or proposals for any of these projects, or a notice of a Board meeting at which such an agreement might be considered, or

---

[5]This is not the first time this court has been presented with a BISD contract made in violation of the Texas Education Code. *See GADV, Inc. v. Beaumont Indep. Sch. Dist.*, 2011 WL 2220242 (E.D. Tex. Jun. 7, 2011) (enjoining performance of a contract for construction service made in violation of the competitive sealed bid proposal process. An audit by the Texas Education Agency in 2010-11 found that at least one of the projects identified in the indictment had not been properly awarded. *See* DX 19 (which was not admitted).

the minutes of a meeting at which the Board voted to approve the award of one of these projects to Mr. Walker.

Likewise, there is no evidence that would support application of the emergency exception of Texas Education Code § 44.031 (h) or alternate (h).[6] While it is uncontested that Hurricane Ike damaged BISD property, neither party submitted the minutes of the Board meeting at which a determination was made that "the delay posed by the contract methods required by this section [Tex. Educ. Code § 44.031] would prevent or substantially impair the conduct of classes or other essential school activities . . . ." Hurricane Ike made landfall on September 13, 2008. Without more, the court cannot simply assume that projects starting months later would be subject to the emergency provision, because there would have been ample time for a normal bid process. Likewise, projects that did not affect the conduct of classes or other essential school activities, such as lights for softball and baseball fields, would not have been covered.[7] In short, there was no evidence that any of the projects identified in the indictment were actually included under any proper Board declaration of emergency under Texas Education Code § 44.031, as was seen in the *Orangefield ISD* opinion discussed above.

Finally the projects identified in the indictment are clearly not covered by the maintenance contract. That contract covers "minor construction, repair, rehabilitation, or alteration of a facility"

---

[6]Because the Texas Legislature must deal with some 6,000 bills in a session of 140 days, two bills containing similar provisions amending the same Code section are occasionally passed and not reconciled. Both are enacted and become law. In this case, alternative paragraphs (h) of §44.031 were passed in the 1999 legislative session. Usually this is corrected in a subsequent legislative session, but for unknown reasons this has not been done. Fortunately, the provisions are similar and the minor differences do not affect this case.

[7]There is no authority for the proposition that lights for evening baseball and softball involve essential school activities.

where "the work is of a recurring nature" but "delivery times are indefinite and indefinite quantities and orders are awarded substantially on the basis of predescribed and prepriced tasks." *See* Tex. Educ. Code § 44.040(a).

As the testimony, and the contract itself establish, the District's electrical maintenance supervisor would send job orders to Mr. Walker for electrical projects the District's own employees could not handle. Mr. Walker would submit an estimate of the time, at the rates specified in the contract, and the cost of needed materials, plus 10% as specified in the contract, for approval. Upon approval, he would complete the job and submit an invoice for payment. Neither the parties nor the court could identify one of the projects listed in the indictment that would meet the limitations of the statute under which the contract was awarded, and therefore be potentially covered by the contract. The court finds that the maintenance contract does not apply to the projects listed in the indictment, and neither party may rely upon provisions of that contract to show that Mr. Walker did or did not commit fraud.

**The jury will be instructed to consider whether fraud was committed without reference to contract provisions**

The federal criminal fraud statutes under which Mr. Walker has been indicted do not depend upon whether BISD complied with a competitive bidding statute. In addition to jurisdictional questions and depending on the precise statute (proof of use of the mail or wire), the gravamen of the Government's case is proving that, for each count, Mr. Walker made material false representations to BISD in connection with a scheme to defraud, with the requisite intent. Therefore the jury will be instructed substantially as follows:

Unlike the case of contracts between private parties, there are laws to protect the public and encourage competition that set requirements governing the way in which a school district can purchase, lease, or otherwise contract for goods and services. Compliance with these laws is mandatory, and if the requirements of the law are not met, the contract is void. Such a void contract is not ratified, or somehow made valid, because the contractor completed the work or because the school district accepted the work and paid him.

It is the duty of the contractor to verify that all of the requirements of the applicable competitive bidding statute are met before work commences or the goods are delivered. A contractor who starts work for, or delivers goods or materials to, a school district under an agreement that does not meet the requirements of the competitive bidding statute is presumed to know the agreement does not comply with the law. He may not enforce that agreement or rely upon it, even if a school employee or the school board approved it, regardless of whether payment was approved by a school employee or the school board.

Nevertheless, as a matter of basic fairness, where a contractor provides materials or performs work on a project, and the school district accepts the project, the contractor is entitled to receive the reasonable value of the goods, materials, and services received by the school district, even though there is no contract. Of course, such a contractor may not violate federal law prohibiting fraud in order to obtain the assignment of the project, or to obtain payment for the work or materials. Under federal law, whether or not fraud occurred does not depend on whether or not a school district complied with competitive bidding laws or whether there was, or was not, a valid contract.

You are instructed that the contract for maintenance, originally approved in August 2006 and renewed in May 2007, August 2008, August 2009, and May 2010, was a valid contract. However, it does not apply to any of the projects identified in the indictment. Therefore, you should not use any part of that contract to decide whether a representation was material or false.

Additionally, because BISD did not comply with the competitive bidding requirements of the Texas Education Code as to the projects identified in the indictment, no contract exists as to any of these projects. Neither the Government nor the Defendant can assert a violation of, or compliance with, a particular contract term in relation to any project identified because there was no such contract.

As explained above, because the Defendant performed work and provided materials on projects BISD accepted, as a matter of fairness, he is entitled to the reasonable value of the materials and services received by the District. But this does not depend on any oral or written agreement.

In other words, under the law, no contract existed between the Defendant and BISD. However, as to each count of the indictment, even though there are no contract terms for you to examine, you must decide whether the Government has proven, beyond a reasonable doubt, that the Defendant made one or more false material representations in connection with submission of invoices to BISD for costs of materials, supplies, or subcontractor services, as part of a scheme to defraud as alleged in that count. Remember that each of the elements of that count, as I have set them out for you below, must be proved.

So **ORDERED** and **SIGNED** this **13** day of **December, 2011.**

_____
Ron Clark, United States District Judge